UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JANET MARIE EWING,

                              Plaintiff,

v.                                                           **DECISION AND ORDER**
                                                                   17-CV-68S

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

      1.      Plaintiff Janet Marie Ewing challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since October 28, 2011 due to rheumatoid arthritis, autoimmune hepatitis, scleritis, osteoporosis, osteoarthritis, and obesity. Plaintiff contends that her impairments render her unable to work, and thus, that she is entitled to disability benefits under the Act.

      2.      Plaintiff applied for disability benefits on December 21, 2011, which the Commissioner denied on April 26, 2012. Plaintiff thereafter requested a hearing before an ALJ. On June 26, 2013, ALJ Robert Harvey held a hearing in Buffalo, New York, at which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on August 15, 2013, issued a decision denying Plaintiff's application for benefits. The Appeals Council granted Plaintiff's request for review on January 22, 2015, and remanded the case to the ALJ.

      3.      A second hearing was held before ALJ Robert Harvey on May 27, 2015, at which Plaintiff and a vocational expert testified. At the time of the second hearing, Plaintiff

1

was 57 years old, with a Bachelor's Degree and Master's Degree, and past work experience as a Caseworker and Senior Caseworker for Child Protective Services. On July 16, 2015, the ALJ issued a written decision again denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for review on November 28, 2016. Plaintiff filed the current action on January 24, 2017, challenging the Commissioner's final decision.[1]

4. On July 20, 2017, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 9). On September 15, 2017, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 10). Plaintiff filed a reply on October 9, 2017 (Docket No. 11), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[1] The ALJ's February 25, 2016 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

> mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since October 28, 2011, the alleged onset date (R. at 22);[2] (2) Plaintiff's rheumatoid arthritis,

---

[2] Citations to the underlying administrative record are designated as "R."

4

osteoarthritis, obesity, and gastroesophageal reflux disease are severe impairments within the meaning of the Act (R. at 22); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in the C.F.R. (R. at 25); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), with certain exceptions[3] (R. at 25); and (5) Plaintiff was capable of performing past relevant work as a senior caseworker and senior caseworker supervisor as customarily completed because it does not require the performance of work-related activities precluded by the claimant's RFC (R. at 31). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—October 28, 2011, through July 16, 2015. (R. at 32).

11. Plaintiff challenges the ALJ's decisions on three grounds: (1) he failed to properly find that Plaintiff's autoimmune hepatitis and breathing condition were severe impairments within the meaning of the Act; (2) he failed to properly weigh the opinions of the treating physicians; and (3) he improperly determined that Plaintiff's daily activities were inconsistent with her alleged impairments, restrictions, and chronic pain. Each argument is addressed in turn.

12. Plaintiff's first argument that the ALJ erred in not considering as severe impairments his autoimmune hepatitis and breathing condition is two-fold. First, she argues that the ALJ erred in failing to consider at all whether her breathing condition was

---

[3] The ALJ specifically found that Plaintiff retained the RFC to perform light work, except that she cannot work in areas with unprotected heights; cannot work around heavy moving or dangerous machinery; no climbing ropes, ladders, or scaffolds; and had occasional limitations in the ability to bend, climb, stoop, squat, kneel, crawl, handle; and that she cannot work in areas where she would be exposed to cold and dampness. (R. at 25).

5

a severe impairment. Second, she argues that the ALJ erred when it concluded that her autoimmune hepatitis was not a severe impairment.

13. A "severe impairment" is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities," including understanding and carrying out simple instructions and responding appropriately to others in usual work situations. 20 C.F.R. § 404.1520(c); § 404.1521. Assuming that Plaintiff's breathing condition is, in fact, a severe impairment, the ALJ's failure to separately evaluate it as such at step two does not necessarily render the decision erroneous. See Buck v. Colvin, No. 14-CV-216S, 2015 WL 4112470, at *4 (W.D.N.Y. July 8, 2015).

14. An ALJ is required to explicitly identify all impairments supported by substantial evidence at step two, in order to avoid "prejudic[ing] the claimant at later steps in the sequential evaluation process." Lowe v. Colvin, No. 6:15-CV-06077(MAT), 2016 WL 624922, at *3 (W.D.N.Y. Feb. 17, 2016) (internal quotation omitted). "Any error in failing to identify a severe impairment, however, is harmless if that impairment is specifically considered during the subsequent steps." Morales v. Colvin, No. 13-CV-550S, 2014 WL 4829351, at *4 (W.D.N.Y. Sept. 29, 2014) (citing Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (finding an alleged step two error harmless because the ALJ considered the impairments found non-severe during subsequent steps)); see also Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) ("As a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless when it is clear that the ALJ considered the claimant's impairments and their

6

effect on his or her ability to work during the balance of the sequential evaluation process.") (internal quotations and punctuation omitted).

15. Although the ALJ does not identify Plaintiff's breathing condition as an impairment at step two, he specifically considers it throughout the remainder of the assessment. At step four, the ALJ's RFC assessment references Plaintiff's breathing issues, acknowledging that Plaintiff testified that she has interstitial lung disease and that she gets "a lot of shortness of breath since December 2014." The ALJ also discussed an October 7, 2011, chest imaging report, which showed that Plaintiff had no acute or active cardiopulmonary disease, and concluded that Plaintiff's "[l]ungs are clear and well expanded." (R. at 29, 460).

16. Because the ALJ already took the medical evidence and testimony of Plaintiff's breathing condition into consideration when crafting the RFC, reviewing the record again would be unlikely to change his determination. Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (remand is not necessary when there is "no reasonable likelihood" that an ALJ's examination of the same evidence would change the RFC determination). Accordingly, any error in not listing the breathing condition as a severe impairment at step two was harmless. Wells v. Colvin, No. 14-CV-197-JTC, 2015 WL 1280536, at *7 (W.D.N.Y. Mar. 20, 2015) ("Where the record establishes the presence of multiple impairments, and the ALJ finds at step two that some impairments (but not others) are severe, thereby allowing plaintiff's claim to proceed through the sequential evaluation process, any error in the ALJ's severity analysis must be considered harmless.").

17. Second, Plaintiff's argument that the ALJ erred in concluding that her autoimmune hepatitis was not a severe impairment is without merit. In so concluding, the

ALJ considered the objective medical evidence of record as well as Plaintiff's own testimony that Plaintiff's autoimmune hepatitis has been in remission since 2003 and that it did not cause significant work-related limitations of function. (R. at 23). That finding is supported by substantial evidence, including reports from three separate medical evaluators: Dr. Ya Li Chen (R. at 383-84), Dr. Chung H. Kim (R. at 344, 457, 553, 808-09), and Dr. John Schwab. Even assuming the ALJ erred in finding that Plaintiff's autoimmune hepatitis was not severe, such an error would be harmless. Where, as here, an ALJ finds that some of the claimant's impairments are severe and others are not, but considers the totality of all of the impairments in determining the RFC, it is not error. See Gemmell v. Comm'r of Soc. Sec., No. 8:16-CV-1014 (CFH), 2017 WL 3328237, at *8 (N.D.N.Y. Aug. 2, 2017) ("[T]he failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and provides explanation showing that he adequately considered the evidence related to the impairment that is ultimately found non-severe."); Goff v. Astrue, 993 F. Supp. 2d 114, 121-22 (N.D.N.Y. 2012) ("Second, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act . . . and continued with the sequential analysis, any errors in his findings at step two of the analysis were harmless.").

18. Plaintiff next contends that the ALJ failed to give adequate weight to the opinion of her treating physician, Dr. Chen, and to the opinion of Dr. Thomas Artim. "The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant. Thus, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (internal citation, quotation marks, and alterations omitted); 20 C.F.R. § 404.1527(d)(2). The "less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999). The ALJ must give "good reasons" for giving a treating physician's medical opinion less than controlling weight, and the failure to do so is grounds for remand. See 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). When the ALJ does not give a treating physician's medical opinion controlling weight, he must explain how he weighed the factors in 20 C.F.R. § 404.1527(c). See Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (S.D.N.Y. 2002).

19. Having reviewed the record evidence, the Court detects no reversible error in the ALJ's treatment of Dr. Chen's or Dr. Artim's opinions. Dr. Chen evaluated Plaintiff on a number of occasions within the relevant disability period—specifically, from June 2011 to November 2012. Following a January 12, 2012 assessment of Plaintiff, Dr. Chen concluded that he "fully support[ed] [Plaintiff's] application for disability." (R. at 384). The ALJ examined Dr. Chen's opinion against the other record evidence and determined that other opinions consistent with the record were more persuasive and better supported. (R. at 29-30). The ALJ adequately explained his reasons for discounting Dr. Chen's opinion and those reasons were supported by substantial evidence in the record. Specifically, the ALJ afforded little weight to Dr. Chen's opinions because Dr. Chen failed to attach a medical source statement of Plaintiff's restrictions or objective findings supporting that conclusion; that Dr. Chen's findings were internally inconsistent; and that Dr. Chen

9

reported identical findings following a November 7, 2012 examination as he did following a March 15, 2012 examination. (Compare R. at 497-98 with R. at 528-30). Significantly, the ALJ gave little weight to Dr. Chen's conclusion on the basis that his opinions conflicted with the assessment of the consulting physician, Dr. Schwab, whose evaluation the ALJ found to be more consistent with the record as a whole. (R. at 28-30). See Suarez v. Colvin, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) ("It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions."). Finally, to the extent that Dr. Chen's opinion concludes that Plaintiff is disabled and therefore unable to work, it is well-settled that Plaintiff's disability is a determination reserved to the Commissioner, not a treating physician. See 20 C.F.R. § 404.1527.

20. Dr. Artim concluded that Plaintiff's rheumatoid arthritis and autoimmune hepatitis render her "totally and permanently disabl[ed]" and "prevent[] her from performing the duties of the position of a senior caseworker." (R. at 549). The ALJ afforded Dr. Artim's findings diminished weight after appropriately evaluating the relevant regulatory factors. Specifically, the ALJ concluded that Dr. Artim's findings deserved little weight due to the lack of history of treatment (specifically, that Dr. Artim only treated Plaintiff once); the dearth of medical evidence supporting his opinion; his opinion's inconsistency with that of consulting physician Dr. Schwab's assessment; and the lack of his expertise with respect to his opining on Plaintiff's vocational abilities. See Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) ("[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence

supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist."). Thus, the ALJ satisfied his duty of applying the treating-physician rule and explaining why he did not afford controlling weight to Dr. Chen's or Dr. Artim's opinions. This Court detects no reversible error in that assessment.

21. Finally, Plaintiff argues that the ALJ improperly determined that her activities of daily living were inconsistent with her alleged impairments in reaching an adverse credibility determination. To evaluate a claimant's credibility, the ALJ is required to take a claimant's reports of limitations into account, 20 C.F.R. § 416.929(a), but the ALJ is "not required to accept the claimant's subjective complaints without question," Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Importantly, it is the function of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1989); Aponte v. Sec'y of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the Commissioner, not the reviewing court, who determines witness credibility). While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." Cahill v. Astrue, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(i).

22. The ALJ concluded that, while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her alleged impairments, restrictions, and chronic pain were not supported by her wide range of daily activities. (R. at 27). Significantly, the ALJ acknowledged that Plaintiff "may experience some degree of pain and discomfort," that she had some difficulty opening jars, and that her pain varied in intensity. (R. at 27). But the ALJ also pointed to Plaintiff's testimony and the objective medical evidence that she cooks, cleans, washes dishes, launders, and drives; and goes out to dinner with her mother. (R. at 27, 53-54, 83, 297-98, 440). See Rusin v. Berryhill, 726 F. App'x 837, 840 (2d Cir. 2018) (summary order) (severe limitations claimed by the plaintiff were inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks").

23. Upon review, this Court finds no cause to disturb the ALJ's credibility finding. The ALJ considered Plaintiff's course of pain treatment as well as the fact that Plaintiff may experience some degree of pain, discomfort, and decreased mobility. (R. at 28). But after careful consideration of the record, the ALJ concluded that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain and other symptoms are not consistent with the objective medical evidence or her daily activities. (R. at 28). The ALJ explained his credibility findings in his decision, and those findings are supported by substantial evidence in the record, including Plaintiff's own testimony. Consequently, this Court finds no error in the ALJ's credibility assessment.

24. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no reversible error. The decision contains a thorough discussion of the

medical evidence supporting the ALJ's determination that Plaintiff is not disabled. Plaintiff's Motion for Judgment on the Pleadings is therefore denied. Defendant's motion seeking the same relief is granted.

    IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

    FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

    FURTHER, that the Clerk of Court is directed to CLOSE this case.

    SO ORDERED.

Dated:    November 19, 2018
             Buffalo, NY

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                              United States District Judge